1    Robert M. Barta (SBN: 108205)
     rbarta@bartagoldberg.com
2    **BARTA | GOLDBERG**
     1801 Century Park East, Suite 1200
3    Los Angeles, California 90067
     Telephone: (310) 479-1454
4    Facsimile: (310) 478-1439

5

6    Attorneys for Defendant
     Leonardo DiCaprio

7

8                    **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10

11   GLOBAL WEATHER PRODUCTIONS,     Case No. 2:23-CV-09279-ODW-SSC
     LLC,
12                                   **MEMORANDUM OF POINTS AND**
                                     **AUTHORITIES IN SUPPORT OF**
13                Plaintiff,         **DEFENDANT'S RULE 12(B)(6)**
          v.                         **MOTION TO DISMISS FOR**
14                                   **FAILURE TO STATE A CLAIM**
     LEONARDO DICAPRIO,              **UPON WHICH RELIEF CAN BE**
15                                   **GRANTED**
                  Defendant.
16                                   Honorable Otis D. Wright II
17
                                     Date:   October 28, 2024
18                                   Time:   01:30 p.m.
                                     Ctrm:   5D
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   PLAINTIFF'S ALLEGATIONS...............................................................2

III.  STANDARD ON A 12(B)(6) MOTION TO DISMISS ...............................4

IV.   THE DISPLAY OF THE VIDEO WAS "FAIR USE" UNDER THE
      COPYRIGHT ACT AND NOT AN INFRINGEMENT ................................5

      A.    The Purpose and Character of the Use Weighs in Favor of Fair Use
            Because It Was for Nonprofit Education Purposes and Transformed the
            Character of the Video .............................................................................7

      B.    The Nature of the Video is Informational and It Was Previously
            Published ...............................................................................................12

      C.    The Portion of the Work Used in Was Justified and Necessary for    the
            Purpose of the Use ................................................................................14

      D.    There Has Been No Alleged or Likely Effect of the Use on the
            Potential Market for or Value of the Video ...........................................15

V.    CONCLUSION ..........................................................................................17

ii

# TABLE OF AUTHORITIES

## CASES

*American Society of Cinematographers v. Schatz*, No. 220CV08607ODWJCX, 2021 WL 4352302 (C.D. Cal., May 25, 2021)..............................................................9, 14

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ................................................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................4

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012)............4, 7

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)................. 6, 7, 9, 11, 14, 15

*City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX) 2015 WL 5025839 (C.D. Cal., Aug. 20, 2015) ...................................................................................9, 13

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) ......10, 14

*Duckhole Inc. v. NBC Universal Media LLC*, CV–12–10077–BRO, 2013 WL 5797279 (C.D. Cal. Sept. 6, 2013) ...............................................................................4

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986) .................................................................7

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002).....................................................4

*Harper & Row, Publishers, Inc. v. Nation Enters*., 471 U.S. 539 (1985)....................6

*Hustler Magazine Inc. v. Moral Majority Inc*., 796 F.2d 1148 (9th Cir. 1986)........5, 9

*Kelly v. Arriba Soft Corp*., 336 F.3d 811 (9th Cir. 2002).........................................6, 14

*Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522 (9th Cir. 2008) ...........................7

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) .....................5

*MCA, Inc. v. Wilson*, 677 F.2d 180 (2d Cir. 1981).........................................................9

*McGucken v. Pub Ocean Limited*, 42 F.4th 1149 (9th Cir. 2022)...............................10

*Monge v. Maya Mags*., 688 F.3d 1164 (9th Cir. 2012) ...............................................12

*Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007).. 6, 7, 8, 9, 10, 14

*Savage v. Council on American-Islamic Relations, Inc.*, C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) ..........................................................7, 15

*Seltzer v. Green Day, Inc.* 725 F.3d 1170 (9th Cir. 2013).............................................9

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)...............................4

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638 (9th Cir. 2020) .............................................................................................9

*Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244 (7th Cir. 1994)..................................4, 7

**STATUTES**

17 U.S.C. § 106............................................................................................................5

17 U.S.C. § 107.......................................................... 5, 6, 7, 10, 12, 14, 15, 16

F.R.C.P. 12(b)(6) .................................................................................................3, 4

iv

## I.    INTRODUCTION

Plaintiff Global Weather Productions, LLC ("Plaintiff") claims that it is the copyright owner of an aerial video showing damage caused by Hurricane Dorian to the Abaco islands in the Bahamas in 2019 ("Video"), and that Defendant Leonardo DiCaprio ("DiCaprio") infringed on Plaintiff's copyright by using the Video in an Instagram post ("Post") about increasing effects of climate change. However, the use of the Video in the Post falls squarely within the Copyright Act's statutory exception of "fair use." The Post was a commentary and educational statement on climate change, stating in part, "As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive." The greater context of the account on which the Post was made ("Account"), which is used mostly for DiCaprio's environmentalist efforts, confirms the purpose and the transformative and educational nature of the Post. See images of the Account, Leonardo          DiCaprio          (@leonardodicaprio),          INSTAGRAM, http://instagram.com/leonardodicaprio/ (last visited October 10, 2024), attached to the Declaration of Robert M. Barta ("Barta Decl.") as Exhibit A, depicting the Account's bio description and thumbnails of the most recent posts on the account, as well as thumbnails of posts made during the period immediately before and after September 4, 2019, all of which demonstrate an educational and non-commercial nature, purpose and use of the Account. Because the alleged use of the Video was fair

use, not an infringement of copyright, Plaintiff's Complaint, which would hinder the sharing of educational information about climate change to the public, should be dismissed.

## II.   PLAINTIFF'S ALLEGATIONS

As relevant to this Motion, Plaintiff alleges the following in its Complaint: Michael Brandon Clement ("Clement") created the Video showing a helicopter view of the damage caused by Hurricane Dorian to the Abaco islands in the Bahamas. Plaintiff's Complaint, ECF No. 1 ("Compl.") 2. Clement created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution. *Id*. 17. In creating the Video, Clement personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recording. *Id*. 15. On September 25, 2019, the Video was registered by the United States Copyright Office. *Id*. 16. On or about June 4, 2023, Plaintiff acquired the rights in and to the Video from Clement by way of written assignment. *Id*. 18.

DiCaprio is an actor and film producer who owns and operates the Instagram Account with the name @leonardodicaprio. *Id*. 3, 19, 20. Plaintiff alleges that the Account is "a key component of DiCaprio's popular and lucrative enterprise." *Id*. 21.

On or about September 4, 2019, the Account displayed the Video as part of the Instagram Post without Plaintiff's permission (notwithstanding that the Complaint

reflects that Plaintiff had no rights to the Video at that time). *Id*. 23. Plaintiff alleges that an exact copy of the original Video recording was copied and displayed on the Account. *Id*. 23, 27.

However, as reflected in Exhibit 2 to Plaintiff's Complaint, the video in the Post is watermarked with the logo of CNN in the upper left corner and it contains the words "GREAT ABACO ISLAND, BAHAMAS / BRANDON CLEMENT/LSM," establishing that the video posted on the Account was not an exact copy of the original. The Post also includes the following statement by the Account:

> "As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive. #Regram #RG @cnn: This aerial footage of the Bahamas shows the devastation left by Hurricane Dorian on Great Abaco Island. Dangerous winds and life-threatening storm surge were expected to continue through Tuesday evening. Dorian was expected to skirt the east coast of Floria as it crawls north."

*Id*. Ex. 2.

Plaintiff alleges that DiCaprio received a financial benefit directly attributable to the alleged infringement, which increased traffic to the Account. *Id*. 34, 35. A large number of people have viewed the unlawful copy of the Video on the Account. *Id*. 36. Plaintiff further alleges that the use of the Video harmed the actual market for the Video, and that this use of the Video, if widespread, would harm Plaintiff's potential market for the Video. *Id*. 38, 39.

## III.    STANDARD ON A 12(B)(6) MOTION TO DISMISS

With this Motion, DiCaprio asks the Court to dismiss the Complaint for failure to state a claim upon which relief can be granted. In deciding Rule 12(b)(6) motions, courts must construe complaints in the light most favorable to the plaintiffs, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Id*. at 988. The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers…'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citations omitted).

In addition, "[i]t is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*quoting Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)) (holding that district could properly dismiss copyright claim on motion to dismiss on the basis of a fair use defense); *see*

*also Duckhole Inc. v. NBC Universal Media LLC*, CV–12–10077–BRO, 2013 WL 5797279, at *3 (C.D. Cal. Sept. 6, 2013) (considering copies of accused infringing episodes as properly judicially noticed, despite not being attached plaintiff's pleadings). Here, Plaintiff refers throughout the Complaint to the Account on which the Post was made. *See* Compl. 3, 19-21, 34, 35. Indeed, Plaintiff relies on DiCaprio's ownership and the context and use of the Account in his allegations of damages. *Id*. Accordingly, the Account should be considered in addition to the Post itself. Accordingly, DiCaprio requests that the Court consider the Account when evaluating this Motion to Dismiss. The full Account can be viewed at https://www.instagram.com/leonardodicaprio/?hl=ar, and screenshots of the Account's bio and exemplary posts are collectively attached to the Barta Declaration as Exhibit A.

## IV.    THE DISPLAY OF THE VIDEO WAS "FAIR USE" UNDER THE COPYRIGHT ACT AND NOT AN INFRINGEMENT

DiCaprio moves to dismiss Plaintiff's claim for copyright infringement on the ground that the display of a version of the Video was a fair use under the Copyright Act. "The Copyright Act, 17 U.S.C. § 106, protects the owner of a copyright by granting him or her exclusive rights to reproduce, distribute, and publicly display copies of the work." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799 (9th Cir. 2003) (internal quotation marks omitted). However, the Copyright Act recognizes certain statutory exceptions to the copyright owner's exclusive rights, including the

"fair use" exception. 17 U.S.C. §§ 106, 107; *see Hustler Magazine Inc. v. Moral Majority Inc*., 796 F.2d 1148, 1151 (9th Cir. 1986).

"The fair use doctrine confers a privilege on people other than the copyright owner to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner." *Id*. (internal quotation marks omitted). The Copyright Act provides that the "fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means ... for purposes such as criticism, comment, news reporting, teaching, ... scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.

When determining whether a use constitutes a "fair use," courts consider several factors, including (1) the purpose and character of the use, including whether the use is commercial or for non-profit educational purposes, (2) the nature of the copyrighted work, (3) the amount and substantiality of the portion of the work used in relation to the work as a whole, and (4) the effect of the use on the potential market for or value of the work. *Id*.; *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 576-77 (1994). "We must be flexible in applying a fair use analysis; it 'is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis.... Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146,

1163 (9th Cir. 2007) (*citing Campbell*, 510 U.S. at 577–78; *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817-18 (9th Cir. 2002)).

Even though the analysis of fair use is a mixed question of law and fact (*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985)), a court may properly dismiss a copyright claim on a motion to dismiss on the basis of a fair use defense. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 529 (9th Cir. 2008); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (*quoting Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *Savage v. Council on American-Islamic Relations, Inc.*, C 07-6076 SI, 2008 WL 2951281, *9 (N.D. Cal. Jul. 25, 2008) (dismissing copyright claim on a motion for judgment on the pleadings based on finding of fair use); *Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986) (finding fair use where the operative facts were undisputed or assumed; the court is to make fair use judgments, which "are legal in nature").

## A.    The Purpose and Character of the Use Weighs in Favor of Fair Use Because It Was for Nonprofit Education Purposes and Transformed the Character of the Video

The first factor in a fair use inquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1); *Campbell*, 510 U.S. at 578. This factor addresses "whether the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the

first with new expression, meaning or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Id*. at 579-80 (1994) (internal citations omitted); 17 U.S.C. § 107(1); *see also Perfect 10, Inc*., 508 F.3d at 1164-65 ("a search engine puts images 'in a different context' so that they are 'transformed into a new creation'").

The Ninth Circuit makes two inquiries for this factor. *See Kelly*, 336 F.3d at 818. The first inquiry is whether the use of the work is commercial in nature. *Id*. at 818. A commercial or profit-making purpose tends to weigh against a finding of fair use. *Harper & Row Publishers, Inc.*, 471 U.S. at 562. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Id*.

Here, the Post, viewed independently and in the context of the other posts on the Account, is plainly intended to inform and educate viewers as to the effects of climate change, as the many other posts by the Account also address environmental issues. *See* Barta Decl. Ex. A. Nothing about the Post is commercial in nature; the Post does not attempt to promote or sell any product or business. The fact that the Account is owned by a celebrity does not make the subject Post commercial in nature. Accordingly, the educational purpose of the use of the Video would weigh in favor of a finding of fair use.

The second inquiry is determining whether the use of the work is transformative. *Kelly*, 336 F.3d at 818. A use is considered transformative only where a party changes a copyrighted work or uses the copyrighted work in a different context such that the work is "transformed into a new creation." *Perfect 10, Inc*., 508 F.3d at 1165; *accord American Society of Cinematographers v. Schatz*, No. 220CV08607ODWJCX, 2021 WL 4352302, at *3 (C.D. Cal., May 25, 2021). While transformation is not necessary for a finding of fair use, the goal of copyright protection is "generally furthered by the creation of transformative works." *Campbell*, 510 U.S. at 579. The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use. *Id*.; *see also Hustler Magazine Inc*., 796 F.2d at 1152 ("Even assuming that the use had a purely commercial purpose, the presumption of unfairness can be rebutted by the characteristics of the use"); *accord City of Inglewood v. Teixeira*, No. CV1501815MWFMRWX) 2015 WL 5025839, at *8 (C.D. Cal., Aug. 20, 2015). When the use has both commercial and non-profit characteristics, the court may consider "whether the alleged infringing use was primarily for public benefit or for private commercial gain." *Hustler Magazine Inc*., 796 F.2d at 1153 (*citing MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981).

"Works are transformative when 'new expressive content or message is apparent,' even if 'the allegedly infringing work makes few physical changes to the

9

original or fails to comment on the original.' " *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 649 (9th Cir. 2020) (*quoting Seltzer v. Green Day, Inc*. 725 F.3d 1170, 1177 (9th Cir. 2013). The Ninth Circuit has consistently held that "making an exact copy of a work may be transformative so long as the copy serves a different function than the original work[.]" *Perfect 10, Inc*., 508 F.3d at 1165 (image originally used for entertainment or aesthetic purposes was transformed where defendant used the same image to facilitate use of an internet browser to locate information on the web); *see also Kelly*, 336 F.3d at 816 ("exact replication" of protected images was fair use where used in a different context from the original).

As explained in *McGucken v. Pub Ocean Limited*,

> "[T]he word 'transformative' ... describe[s] a copying use that adds something new and important." Google, 141 S. Ct. at 1203. The "benchmarks" of transformative use are "(1) further purpose or different character in the defendant's work, i.e., the creation of new information, new aesthetic, new insights and understanding; (2) new expression, meaning, or message in the original work, i.e., the addition of value to the original; and (3) the use of quoted matter as raw material, instead of repackaging it and merely superseding the objects of the original creation." [*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 453 (9th Cir. 2020)] (citations and internal quotation marks omitted).

*McGucken v. Pub Ocean Limited*, 42 F.4th 1149, 1161 (9th Cir. 2022).

Further, "[c]onsider the 'purposes' listed in the preamble paragraph of § 107: 'criticism, comment, news reporting, teaching ..., scholarship, or research.' Although

the examples given are '"illustrative and not limitative,"' they reflect 'the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses,' and so may guide the first factor inquiry." *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (holding that use of an altered version of a photograph for substantially the same purpose and for a commercial nature was not fair use) (quoting Campbell, 510 U.S. at 577–578 and § 101)). "[T]he first factor (which is just one factor in a larger analysis) asks 'whether *and to what extent*' the use at issue has a purpose or character different from the original. Campbell, 510 U.S. at 579, 114 S.Ct. 1164 (emphasis added). The larger the difference, the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." *Andy Warhol Foundation for the Visual Arts, Inc.*, 598 U.S. at 529.

In this case, the display of the Video was transformative because the Account incorporated commentary about climate change and its significant impact, which was the focus and purpose of the Instagram Post, as well as an ongoing educational topic addressed on the Account. The Post was part of the Account's ongoing efforts to inform and educate the public about environmental issues including climate change and states in part, "As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive." Compl., Ex. 2.

DiCaprio's use of the video does not merely supersede Plaintiff's purpose, because the original Video did not address, refer to or mention climate change. Plaintiff's stated purpose in creating the Video was simply to "show[] a helicopter view of the damage caused by Hurricane Dorian to the Abaco islands in the Bahamas." Compl. 2.

Because the use of the CNN version of the Video was not commercial in nature and it transformed the Video into an example of the increasing effects of climate change, this first factor weighs heavily in favor of a finding of fair use.

**B.    The Nature of the Video is Informational and It Was Previously Published**

The second fair use factor looks to the nature of the plaintiff's work. 17 U.S.C. § 107(2). In assessing the copyrighted work's nature, we consider "the extent to which it is creative and whether it is unpublished." *McGucken*, 42 F.4th at 1161 (*citing  Monge v. Maya Mags.*, 688 F.3d 1164, 1177 (9th Cir. 2012). "Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works. However, whether a work is published or unpublished is a critical element of its nature, and '[p]ublished works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred.'" *Kelly*, 336 F.3d at 820 (*citing A & M Records*, 239 F.3d 1004, 1016 9th Cir. 2000; *Campbell*, 510 U.S. at 586) (internal quotation marks omitted)).

Here, the Video is not creative in nature. It is simply a video showing a helicopter view of the damage caused by Hurricane Dorian to the Abaco islands in the Bahamas. Compl. 1. Plaintiff exaggerates the creative efforts involved in making the Video, asserting that Clement personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recording. Compl. 1, 3. Everyone who take a photograph or video must make those basic decisions to some degree, and that does not, without more, demonstrate any particular level of creativity.

Indeed, it is apparent from Plaintiff's allegations and the Exhibits to the Complaint showing images that the Video was much more informational than creative. The Video was taken after a hurricane of the damage it caused, from the air in a helicopter, which necessarily would limit most choices as to the angle, perspective, depth and lighting of the Video. Indeed, the video conveys factual information (i.e., what Great Abaco Island looked like after the hurricane hit), not art. This factor therefore weighs in favor of a finding of fair use. *See, e.g., City of Inglewood*, 2015 WL 5025839 at *9–10 (granting motion to dismiss).

Further impacting this second factor is whether the Video had been published before it was displayed in the Post. Exhibit 2 of the Complaint reflects that the Video had been previously published by CNN on CNN's highly followed Instagram account, before it was displayed in the Post. Because the Video is much more

13

informational than creative, and it had been published before any version was used in the Post, this factor weighs in favor of a finding of fair use.

### C.    The Portion of the Work Used in Was Justified and Necessary for the Purpose of the Use

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole ... are reasonable in relation to the purpose of the copying." 17 U.S.C. § 107(3). The Ninth Circuit has held that the reuse of an entire image may be reasonable if it serves the defendant's intended purpose. See *Perfect 10, Inc.*, 508 F.3d at 1167 (use of entire image necessary to facilitate use of search engine).

To evaluate the third factor requires comparing the amount of the work used to the purpose of the copying. *See Campbell*, 510 U.S. at 586-587. "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820 (internal quotation marks omitted). "However, the extent of permissible copying varies with the purpose and character of the use. If the secondary user only copies as much as is necessary for [its] intended use, then this factor will not weigh against [it]." *Id*. at 820–21; *American Society of Cinematographers*, 2021 WL 4352302, at *4. "This factor circles back to the first factor because 'the extent of permissible copying varies with the purpose and character of the use.'" *Dr. Seuss*, 983 F.3d 443, 456 (9th Cir. 2020) (*quoting Campbell*, 510 U.S. at 586–87).

Here, Plaintiff alleges that the entire Video was used. As explained above, the first factor weighs in favor of fair use because the Video was used for a different purpose than that for which it was taken; the Post was intended to instill an understanding of the effects of climate change, as demonstrated by the damage caused by one hurricane, a transformative purpose that was best expressed and would make the largest impact by reproducing the entirety of the video published by CNN, showing the full extent of the destruction. Accordingly, this factor weighs in favor of fair use.

**D.    There Has Been No Alleged or Likely Effect of the Use on the Potential Market for or Value of the Video**

The fourth and final factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Evaluation of this factor considers both the extent of the market harm caused by the alleged infringer's conduct and the adverse impact on the potential market for the original if this conduct were unrestricted and widespread. *Campbell*, 510 U.S. at 590.

There are no facts in the Complaint showing that the market for the Video was or was likely to be negatively impacted. *See Savage v. Council on American-Islamic Relations, Inc*., C 07-6076 SI, 2008 WL 2951281, *9 (N.D. Cal. Jul. 25, 2008) (dismissing copyright claim on a motion for judgment on the pleadings where plaintiff failed to allege an impact on the actual or potential sale, marketability or demand for the original copyrighted work). Significantly, there are no allegations as

to any attempts to sell or license the Video, nor any material facts supporting any effect on the market for the Video whatsoever. The Complaint does not contain any explanation as to how the Post has affected the market for or value of the Video, undoubtedly because, if anything, interest in the Video would have been significantly increased by reason of it being exposed to DiCaprio's Instagram followers.

Further, the Post did not use the original Video, but a version from the CNN Instagram account, which had previously used the Video in a news story specifically about Hurricane Dorian. The Video apparently had been licensed to news outlet CNN to report immediately on storm damage, as evident by the CNN logo on the version of the Video seen on the Account, and the prior publication demonstrates the Video's most likely potential market, if any remained: to be part of a story by a news outlet, a documentary or film or television series. Further, presumably anyone who wanted to use the Video for a commercial purpose would need to obtain a copy that did not contain CNN's logo. That would require them to seek out the owner of the original Video, who was identified on the CNN version of the Video.

In contrast, the purpose of the Post was to educate people about climate change and to incite changes in behavior or policy, not to sell any product or the Video itself.

Accordingly, this factor weighs in favor of a determination of fair use.

# V.    CONCLUSION

DiCaprio has established that the use of the Video in the subject Instagram Post constituted fair use under 17 U.S.C. § 107, because (1) use of the Video was for nonprofit education purposes and transformed the character of the Video; (2) the nature of the Video is informational, and it was previously published; (3) the portion of the work used in was justified and necessary for the purpose of the use; and (4) there has been no alleged or likely effect of the use on the potential market for or value of the Video.

For these reasons, DiCaprio respectfully requests that the Court grant this Motion to Dismiss Plaintiff's Complaint.

Dated:  October 14, 2024          By: _____
                                    */s/ Robert M. Barta*
                                    Robert M. Barta, Esq.
                                    BARTA | GOLDBERG
                                    1801 Century Park East, Suite 1200
                                    Los Angeles, CA 90067
                                    T: 310-479-1454
                                    F: 310-478-1439
                                    rbarta@bartagoldberg.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant Leonardo DiCaprio, certifies that this brief contains 4,208 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Robert M. Barta*
**Robert M. Barta**

1

2

## CERTIFICATE OF SERVICE

3

4          On October 14, 2024, I electronically submitted the foregoing document with
the clerk of court for the U.S. District Court, Central District of California, using the
electronic case filing system of the court. I hereby certify that I have served all
counsel and/or pro se parties of record electronically or by another manner authorized
by Federal Rule of Civil Procedure 5 (b)(2).

5

6

7

8                                          */s/ Robert M. Barta*
                                       **Robert M. Barta**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28