**SANDERS LAW GROUP**
Craig Sanders, Esq. (Cal Bar 284397)
Jacqueline Mandel, Esq. (Cal Bar 317119)
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
Email: jmandel@sanderslaw.group

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Global Weather Productions, LLC, | Case No. 2:23-cv-09279-ODW-SSC |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** |
| v. | |
| Leonardo DiCaprio, | Judge: Hon. Otis D. Wright II<br>Magistrate Judge: Hon. Stephanie S. Christensen |
| Defendant. | |
| | Date:   December 16, 2024<br>Time:   1:30 p.m.<br>Court:  Courtroom 5D |

a

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................3

    The Parties ....................................................................................................3

    Plaintiff's Video ............................................................................................4

    Defendant's Infringing Activity ....................................................................4

ARGUMENT ....................................................................................................6

I.      STANDARDS OF REVIEW..................................................................6

    A. STANDARD OF REVIEW – MOTIONS TO DISMISS................................................6

    B. STANDARD OF REVIEW – FAIR USE..................................................................7

II.    THE COMPLAINT STATES A CLAIM FOR RELIEF .........................8

III.   DEFENDANT'S AFFIRMATIVE DEFENSE OF FAIR USE ARGUMENT IS PREMATURE ................................................................8

IV.   DEFENDANT'S FAIR USE ARGUMENT IS ERRONEOUS ..................10

    A. THE FIRST FAIR USE FACTOR DOES NOT FAVOR DEFENDANT .....................10

    B. THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ..................15

    C. THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT .....................16

    D. THE FOURTH FAIR USE FACTOR DOES NOT FAVOR DEFENDANT ..................18

    E. BALANCING THE FACTORS ............................................................................21

CONCLUSION ................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Am. Geophysical Union v. Texaco Inc.*,

    60 F.3d 913, 926 (2d Cir. 1994) ...........................................................21

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,

    598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023)......................... passim

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,

    992 F.3d 99 (2d Cir. 2021)...................................................................7

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,

    11 F.4th 26 (2d Cir. 2021) *cert. granted,* 142 S. Ct. 1412 (2022), and *aff'd sub*

    *nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508

    (2023) ...................................................................................... passim

*Ashcroft v. Iqbal*,

    556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)................................6

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)................................6

*Blanch v. Koons*,

    467 F.3d 244, 250 (2d Cir. 2006) ...........................................................7

*Browne v. McCain*,

    612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009) .........................................9

*BWP Media USA, Inc. v. Gossip Cop,* 196 F.Supp.3d at 409 (S.D.N.Y. 2016)......19

*Cariou v. Prince*,

    714 F.3d 694, 705 (2d Cir. 2013) .................................................7, 14

*Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 627 (7th Cir. 2003)..........19

*Delano v. Rowland Network Commc'ns LLC,*

    No. CV-19-02811-PHX-MTL, 2020 WL 2308476, at *4 (D. Ariz. 2020) ..........9

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*, No. 19-55264, 2021 WL 3721438, at *2 (9th Cir. Aug. 23, 2021) ................................18

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1402 (9th Cir. 1997) ..................................................16

*Dr. Seuss Enters., L.P. v. ComicMix LLC,* 983 F.3d 443, 459 (9th Cir. 2020) ..................................................19

*Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004) ..................................................8

*Ets–Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074 (9th Cir. 2000).....................15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)................................8

*Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1186 (2021) ...............................2

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 105 S. Ct. 2218, 2230, 85 L. Ed. 2d 588 (1985) ......... passim

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003)................................13

*Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) ..................................................9

*Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 941 (9th Cir.)............17

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986) ..................7

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) ........16

*McGucken v. Newsweek LLC,* 464 F. Supp. 3d 594, 608 (S.D.N.Y. 2020) ..................................................17

*McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1161 (9th Cir. 2022).......................16

*Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ........................7

*Monge v. Maya Mags, Inc.*, 688 F.3d 1164, 1173 (9th Cir. 2012) ....... 12, 13, 15, 18

*Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ...........13

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1165 (9th Cir. 2007)...........13

*S.O.S. Inc. v. Payday, Inc*.,

   886 F.2d 1081, 1085 (9th Cir. 1989) ................................................................15

*Scott v. Kuhlmann*,

   746 F.2d 1377, 1378 (9th Cir. 1984) ................................................................9

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992).........8

*Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1179 (9th Cir. 2013)...........................10

*Sofa Ent., Inc.*, 782 F. Supp. 2d at 907 ..................................................................16

*Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors,* 786 F.2d

   1400, 1409 (9th Cir. 1986).............................................................................16

Vasquez v. L.A. County,

   487 F.3d 1246, 1249 (9th Cir.2007) ................................................................6

*Wall Data v. Los Angeles Cty Sheriff's Dept,,* 447 F.3d 769, 778 (9th Cir. 2006) .13

**Statutes**

17 U.S.C. § 107...........................................................................................7, 10

17 U.S.C. § 107(3) .........................................................................................17

17 U.S.C. § 401(c) .........................................................................................15

**Other Authorities**

Pierre N. Leval, Toward a Fair Use Standard,

   103 Harv. L. Rev. 1105, 1111 (1990)..............................................................12

U.S. Const., Art. I, § 8, cl. 8..........................................................................7

**Treatises**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05(B)(6) ....14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**Rules**

Fed. R. Civ. P. 12(b)(6).............................................................................................1, 6

Plaintiff Global Weather Productions, LLC ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Leonardo DiCaprio ("Defendant")'s motion to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth herein, Defendant's motion should be denied. However, in the event Defendant's motion is granted, Plaintiff respectfully requests leave of Court to file a second amended pleading.

## PRELIMINARY STATEMENT

This is a clear-cut case of copyright infringement where Defendant, a prominent public figure, took Plaintiff's copyrighted video and republished it for display on his Instagram account to his approximately sixty-one (61) million followers without Plaintiff's authorization or permission.

Defendant expropriated a copyrighted video of the helicopter view of the damage caused by Hurricane Dorian on Abaco Island in the Bahamas (the "*Video*"). Defendant appropriated this Video from CNN, and admits that the CNN watermark is on the Video it published. (*Dkt. No.* 28 at pg. 4, ¶¶ 2-8). Defendant further admits that his infringing post contains the words "GREAT ABACO ISLAND, BAHAMAS / BRANDON CLEMEND/LSM". (*Dkt. No.* 28 at pg. 4, ¶¶ 5-9). Thus, Defendant clearly knew the Video was licensed to CNN by Brandon Clement. Defendant concedes it would be easy to have properly licensed the Video by stating, "[p]resumably anyone who wanted to use the Video for a commercial purpose would need to obtain a copy that did not contain CNN's logo. That would require them to seek out the owner of the original Video, who was identified on CNN's Video." (*Dkt. No.* 28 at pg. 18, ¶¶ 16 - 19).

Defendant moves to dismiss this case for failure to state a claim, on the grounds that his unlawful copying, reproduction and display of the Video is protected by the fair use doctrine. Courts rarely consider an accused infringer's fair

use defense in the context of a motion to dismiss, and the instances in which the Court does make this determination have further narrowed (or should narrow) in the wake of the Supreme Court's recent decision in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 143 S. Ct. 1258, 215 L. Ed. 2d 473 (2023).

The Supreme Court has held that where the question of fair use is being asserted to support a dismissal pursuant to Rule 12(b)(6), "[r]eviewing courts should appropriately defer to the jury's findings of underlying facts, but the ultimate question whether those facts amount to a fair use is a legal question for judges to decide *de novo*." *Google LLC v. Oracle Am., Inc*., 141 S. Ct. 1183, 1186 (2021) (recognizing that the application of "fair use" might "involve determination of subsidiary factual questions…" wherein, in that case, the Federal Circuit [should leave] the "factual determinations to the jury and reviewing the ultimate question, a legal question, *de novo*.") (internal quotations and citations omitted.)

As will be set forth herein, the Supreme Court's aforementioned decision calls into question whether there are any instances in which a District Court could properly consider a fair use defense at the motion to dismiss stage. That is because the transformative inquiry (the main factor in a fair use analysis) has been described by many Courts as speaking to the "heart" of the fair use defense. At this stage of the proceedings, however, Defendant is precluded from introducing any evidence beyond the four corners of the pleadings. As such, Defendant does not (and cannot) provide the Court with any evidence necessary to evaluate the nuanced degrees of the first factor of the fair use analysis, the transformative and commercial nature of the use, under *Warhol*. Here, analyzed under the *Warhol* test, the Court must find Defendant's usage of Plaintiff's work was for the exact purpose for which it was created and was for profit and is non-transformative and therefore, not fair, at least at this stage of the proceedings.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## STATEMENT OF FACTS

The facts of this case are taken from the First Amended Complaint (*Dkt. No.* 26, *et seq.*) unless otherwise indicated, which facts must be accepted as true for purposes of Defendant's Motion to Dismiss.

### The Parties

Plaintiff is a Wyoming limited liability company and maintains its principal place of business in Sheridan County, Wyoming. (*Dkt. No.* 26 at ¶ 5).

Defendant is a citizen of the State of California and upon information and belief, resides in Los Angeles, California. (*Id.* at ¶ 6). Defendant is an actor, film producer, and a public figure that owns and operates the social media account @leonardodicaprio on Instagram.com (the "*Account*"). (*Id.* at ¶ 3). Defendant is the operator of the Account and is responsible for its content. (*Id.* at ¶ 22). Currently, the Account has sixty-one million and two hundred thousand (61.2 million) followers. (*Id.* at ¶ 25).

The Account is a key component of Defendant's popular and lucrative commercial enterprise. (*Id.* at ¶ 23). Defendant uses the Account for commercial purposes to promote his artistic works (i.e., his movies). (*Id.* at ¶ 24; *Dkt. No.* 28 at pg. 1, ¶¶ 14 - 17). He asserts that he uses his Account to "inform and educate viewers about the significant impact of climate change," however, it is only used "***mostly*** for DiCaprio's environmentalist efforts" (emphasis added). (*Dkt. No.* 28 at pg. 1, ¶¶ 14 – 17; *Dkt. No.* 28 at pg. 10, ¶¶ 4-8).

Notably, however, Defendant fails to make any mention that as an Instagram user with a large audience, the Account is likely monetized. Defendant does not assert that he does not receive any compensation or profit from the Account. He also omits that the Account advertises various third-party companies, including, but not limited to, his own company, Re:Wild. Defendant makes no comment on whether

he profits from these advertisements. More importantly, Defendant does not claim that he did not profit from publishing the appropriated Video.

**Plaintiff's Video**

On September 3, 2019, Michael Brandon Clement ("*Clement*") authored the Video. (*Id.* at ¶ 14). Clement published the Video for the purpose of displaying and educating the public of the severity of Hurricane Dorian in the Bahamas. (*Id.* at ¶ 16). On September 25, 2019, the Video was registered by the United States Copyright Office under Registration No. PA 2-214-139. (*Id.* at ¶ 17). Clement created the Video with the intention of it being used commercially and for the purpose of display and/or public distribution. To this end, Plaintiff licensed the Video to three different news agencies, including CNN. (*Id.* at ¶ 19). CNN added a "CNN" watermark to the Video upon publishing it.

Thereafter, on June 4, 2023, Plaintiff acquired all rights in and to the Video from Clement by way of written assignment. (*Id.* at ¶ 20).

**Defendant's Infringing Activity**

On or about September 4, 2019, Defendant displayed the Video on his Account as part of a post at URL: https://www.instagram.com/leonardodicaprio/. (*Id.* at ¶ 26). The Video received no less than 1,622,324 views on the Account. (*Id.* at ¶ 28).

The Video displayed by Defendant contained the "CNN" watermark and Defendant credited "@cnn" for the Video. (*Id.* at ¶ 29). The Video used by Defendant also contained the words "GREAT ABACO ISLAND, BAHAMAS / BRANDON CLEMENT/LSM". (*Dkt. No.* 28 at pg. 4, ¶¶ 4 - 9). Defendant published the entire Video that was displayed by and licensed to CNN. (*Dkt. No.* 28 at pg. 1, ¶¶ 1 - 12).

Defendant posted the Video for the purpose of demonstrating the severity and aftermath of Hurricane Dorian on Abaco Island in the Bahamas – the exact same

purpose as Plaintiff. (*Id.* at ¶¶ 30, 31). Defendant added the following comment to the infringing post:

> As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive. #Regram #RG @cnn: This aerial footage of the Bahamas shows the devastation left by Hurricane Dorian on Great Abaco Island. Dangerous winds and life-threatening storm surge were expected to continue through Tuesday evening. Dorian was expected to skirt the east coast of Floria as it crawls north.

*Id. Ex. 2.*

Defendant claims that he is not a news reporter, yet he admits that the Video is newsworthy. (*Dkt. No.* 28 at pg. 4, ¶ 21; *Dkt. No.* 28 at pg. 17, ¶ 13). Defendant could have used any other video or photograph depicting this hurricane, or any other hurricane, to serve his purported purpose to "demonstrate climate change." (*Id.* at ¶ 32; *Dkt. No.* 28 at pg. 17, ¶¶ 8- 11). Instead, Defendant admits that he volitionally copied and/or displayed Plaintiff's copyright protected Video (the Video that was licensed by CNN and published by CNN) on the Account without permission from Plaintiff or CNN. (*Id.* at ¶ 34). Defendant stole the Video that CNN and two other sources paid to license and displayed it to his 61.2 million followers without paying a cent. CNN currently only has twenty million and one hundred thousand followers on its Instagram Account[1]. CNN believed it was receiving breaking news and exclusive coverage, yet, Defendant, who has three times the viewership of CNN, appropriated the Video and posted it for free. Plaintiff first observed, and actually discovered this infringement on September 14, 2022. (*Id.* at ¶ 35).

---

[1] *See https://www.instagram.com/cnn/?hl=en.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# ARGUMENT

Defendant's motion to dismiss must be denied since it ignores controlling precedent from the Supreme Court which cautions courts to not interpret a fair use defense prematurely and to not evaluate the fair use factors too narrowly, lest the exception swallow the rule. As will be set forth herein, a court can conduct a legally defensible analysis of same at the motion to dismiss stage in a decreasingly rare set of circumstances.

## I.    STANDARDS OF REVIEW

In considering Defendant's motion to dismiss, the Court should consider two basic tenets of law. In no particular order, they are the standards applicable to a motion to dismiss in general, and the standards applicable to a fair use defense. These are discussed *in seriatim.*

### A. STANDARD OF REVIEW – MOTIONS TO DISMISS

The standards applicable to a motion to dismiss are well-settled. To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Dismissal for failure to state a claim is proper only "if it appears beyond doubt" that the non-moving party "can prove no set of facts which would entitle him to relief." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir.2007) (internal quotations and citation omitted). In making this determination, the court must accept all allegations of fact as true and construe the complaint in the light most favorable to the non-moving party. *Id.* Dismissal is not warranted unless "it is clear that no set of facts in support of the plaintiff's claim would entitle him to

relief." *Mir v. Little Co. of Mary Hosp.,* 844 F.2d 646, 649 (9th Cir. 1988) *citing Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir. 1986).

B. **STANDARD OF REVIEW – FAIR USE**

The purpose of the copyright law is "[t]o promote the Progress of Science and useful Arts...." U.S. Const., Art. I, § 8, cl. 8. "The copyright is not an inevitable, divine, or natural right that confers on authors the absolute ownership of their creations. It is designed rather to stimulate activity and progress in the arts for the intellectual enrichment of the public." *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013), holding modified by *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2d Cir. 2021) ("*Warhol II*") and holding modified by *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26 (2d Cir. 2021) ("*Warhol III*") *cert. granted,* 142 S. Ct. 1412 (2022), and *aff'd sub nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ("*Warhol IV*"). Because "excessively broad protection would stifle, rather than advance, the law's objective, [the] fair use doctrine mediates between the property rights [copyright law] establishes in creative works, which must be protected up to a point, and the ability of authors, artists, and the rest of us to express them—or ourselves by reference to the works of others, which must be protected up to a point." *Id.* quoting *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006) (cleaned up).

The fair use doctrine was subsequently codified in the Copyright Act of 1976, which lists four non-exclusive factors that must be considered in determining whether any otherwise infringing display constitutes a fair use: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The doctrine of fair use is "an equitable rule of

reason" and thus the "statutory factors are not exclusive." *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1522 (9th Cir. 1992), as amended (Jan. 6, 1993).

Critically, fair use is an affirmative defense, and the burden of persuasion is on the party asserting such defense. *Warhol III*, 11 F.4th at 49.

## II.    THE COMPLAINT STATES A CLAIM FOR RELIEF

It is well-settled that to establish a *prima facie* claim for copyright infringement, a plaintiff must satisfy a simple two-part test, *to wit*: (1) ownership of a valid copyright; and (2) that the defendant violated the copyright owner's exclusive rights under the Copyright Act. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

Here, it cannot be disputed that the FAC states a claim for relief insofar as Defendant does not contest Plaintiff's copyright, and Defendant admits in his motion to dismiss that he copied and displayed Plaintiff's Video (the portion published by CNN), and that he did not have a license or other permission to do so. Accordingly, the action cannot be dismissed unless Defendant can meet his burden of establishing his fair use affirmative defense as both a matter of fact and law, by a preponderance of the evidence. For the reasons that follow, the Court should find that he has not met his burden.

## III.    DEFENDANT'S AFFIRMATIVE DEFENSE OF FAIR USE ARGUMENT IS PREMATURE

Fair use presents a mixed question of law and fact, and because fair use is an affirmative defense, defendants bear the ultimate burden of proving that the fair use factors balance in their favor. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560, 105 S. Ct. 2218, 2230, 85 L. Ed. 2d 588 (1985).

This Court has routinely held that affirmative defenses may also generally not be raised in a motion to dismiss. *Delano v. Rowland Network Commc'ns LLC,* No.

CV-19-02811-PHX-MTL, 2020 WL 2308476, at *4 (D. Ariz. 2020); *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). For these reasons, courts "rarely analyze fair use on a 12(b)(6) motion." *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (it is "unusual" to decide fair use on a motion to dismiss). Defendant's reliance on *Leadsinger, Inc. v. BMG Music Pub.* and *Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986) are misplaced as the Court found it was only appropriate to decide fair use on a motion to dismiss when there were no material facts in dispute which is not the case here. There are, in fact, numerous facts that are in dispute making it improper to rule upon at this juncture.

Similarly, Defendant's reliance on *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012), (*quoting Wright v. Assoc. Ins. Cos. Inc*., 29 F.3d 1244, 1248 (7th Cir. 1994)) is unpersuasive case law as it is from the Seventh Circuit. Further, his citation to *Savage v. Council on American-Islamic Relations, Inc.,* C 07-6076 SI, 2008 WL 2951281, *9 (N.D. Cal. Jul. 25, 2008) is distinguishable as the Court in that matter ruled upon a motion for judgment on the pleadings, not a motion to dismiss.

In this vein, Plaintiff's stance is further bolstered by the Supreme Court's decision in *Warhol IV* (discussed *infra),* which held that the first fair use factor is a "matter of degree" requiring a very nuanced examination of the facts, and that such analysis directly bears on the evaluation of the remaining fair use factors.

For the reasons that follow and based on the foregoing Ninth Circuit Supreme Court decisions, it is respectfully submitted that the Court should deny Defendant's motion to dismiss, insofar as the record does not support the grant of such relief at this time.

## IV. <u>DEFENDANT'S FAIR USE ARGUMENT IS ERRONEOUS</u>

Defendant's motion to dismiss is predicated on the contention that an evaluation of the four fair use factors purportedly shows that each of the factors favor Defendant's admittedly unlawful use of Plaintiff's rights-protected Video. For the reasons that follow, the Court should find the factors do not favor Defendant.

### A. <u>THE FIRST FAIR USE FACTOR DOES NOT FAVOR DEFENDANT</u>

As was noted above, the first fair use factor requires the Court to consider the "purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. The first fair use factor requires the court to "consider the extent to which the secondary work is 'transformative,' as well as whether it is commercial. *Warhol IV*. "[T]ransformative works lie at the heart of the fair use doctrine, and a use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use." *Id*. As the Ninth Circuit has observed, the first and fourth fair use factors "have 'dominated the case law' and are generally viewed as the most important factors." *Seltzer v. Green Day, Inc*., 725 F.3d 1170, 1179 (9th Cir. 2013).

In urging the Court to find that the first fair use factor favors him, Defendant argues that his use of the infringing post was not commercial in nature, and it was used to "inform and educate viewers as to the effects of climate change." (*Dkt. No.* 28 at pg. 10). Defendant alleges that providing information about environmental issues does not further his career; however, he fails to allege that he made no profit from the infringement post, that he does not profit from the Account, or that the environmental content does not bolster his advertisement revenue or revenue to his business "Re:wild". (*Dkt. No.* 28 at pg. 10, ¶¶ 13 – 17).

It therefore cannot be disputed that Defendant's theft of Plaintiff's Video was part of a commercial venture, insofar as Defendant is a public figure who used the

Account to promote his brand, his business, his movies, and he may profit simply from posting to the Account based upon his massive 61.2 million followers. Accordingly, Defendant's claim of fair use is severely diminished by its commercial purpose under *Warhol IV*. Without any evidence of whether Defendant profited from the infringement post and how much he earns from the Account, the Court cannot properly analyze this factor – further proving that material facts are still in dispute at this legal stage.

Defendant alleges that CNN's Video was used for educational purposes, yet he ignores the fact that CNN paid Plaintiff for the use of this "educational" video. (*Dkt. No.* 28 at pg. 10, ¶¶ 23-26). The fact that CNN had to pay for footage that Defendant deems "educational" weighs in factor that the Video is commercial.

Defendant posits that even if the post did have some commercial use component, when there are commercial and non-profit characteristics, the Court may consider the primary use of the work. (*Dkt. No.* 28 at pg. 10, ¶¶ 17 -23). Thus, the second argument posed by Defendant is that he transformed the use of Plaintiff's Video simply because his display of CNN's Video was to inform and educate viewers about the significant impact of climate change. (*Dkt. No.* 28 at pg. 13, ¶¶ 17 – 20). Defendant acknowledges that he did not transform or alter the Video in any way from the CNN Video.

Defendant uses the hand-selected excerpt of his commentary on the Video, "As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive" to support his position. (*Dkt. No.* 28 at pg. 13, ¶¶ 21 – 24). Defendant fails to illustrate that his entire commentary simply describes what is occurring in the Video (i.e., This aerial footage of the Bahamas shows the devastation left by Hurricane Dorian on Great Abaco Island). *Id.*

Notably, the "commentary" by Defendant includes statements simply describing what is occurring in the Video and adds that these are the effects of climate change. These quotes, along with the other "commentary" by Defendant, do not add any criticism or comments to the Video itself. As the Supreme Court held, when "commentary has no critical bearing on the substance or style of the original composition, ... the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger." *Warhol IV*, 143 S. Ct. at 1276. Thus, it is clear that the purpose of Defendant's use of the Video and Plaintiff's publishing of the Video to CNN served the exact same purpose. Therefore, Defendant's use was not transformative in any way, and therefore lacks the degree of transformation required to find fair use. The Supreme Court (*Warhol IV*) could not have made it clearer that it is difficult, if not impossible, to find a secondary work to be transformative under these circumstances.

Defendant's arguments that his comments on the "newsworthy" Video adds education value is unpersuasive and misguided as this Court has already ruled upon this argument. "In other words, newsworthiness itself does not lead to transformation." *Monge,* 688 F.3d at 1176. A defendant's use of a copyright protected work that involves "wholesale copying sprinkled with written commentary—was at best minimally transformative." *Id.; See* Pierre N. Leval, *Toward a Fair Use Standard,* 103 Harv. L. Rev. 1105, 1111 (1990) (use of copyrighted material that "merely repackages or republishes the original" is unlikely to be fair use).

Although Defendant claims he is not a news reporter, he admits that the Video is newsworthy. (*Dkt. No.* 28 at pg. 17, ¶¶ 12 – 13). If the Account is used to educate his followers about climate change, it is important to note that many followers likely turn to the Account for news updates on such climate change news. As the *Monge*

Court held, "[a]lthough news reporting is an *example* of fair use, it is not sufficient itself to sustain a *per se* finding of fair use." *Monge v. Maya Mags, Inc.*, 688 F.3d 1164, 1173 (9th Cir. 2012) (emphasis added). **"In other words, fair use has bounds even in news reporting, and no per se "public interest" exception exists."** *Id.* (emphasis added) (citing *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 307 (3d Cir. 2011) ("[N]ews reporting does not enjoy a blanket exemption from copyright. News organizations are not free to use any and all copyrighted works without the permission of the creator simply because they wish to report on the same events a work depicts")).

Continuing, the Supreme Court held that "transformativeness is a matter of degree. An overbroad concept of transformative use, one that includes any further purpose, or any different character, would narrow the copyright owner's exclusive right to create derivative works. *Warhol IV*, 143 S. Ct. at 1275. Further, as the Ninth Circuit has observed, "where the use is for the same intrinsic purpose as [the copyright holder's] ... such use seriously weakens a claimed fair use." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 819 (9th Cir. 2003) (alteration in original). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1165 (9th Cir. 2007) *citing Wall Data v. Los Angeles Cty Sheriff's Dept,,* 447 F.3d 769, 778 (9th Cir. 2006).

Here Defendant's addition of "As climate change continues to heat up our oceans and air, storms like Atlantic hurricanes will only become stronger and more destructive" does not change the purpose of the Video nor does it make it an "educational" Video. He simply provided a substitute for the Video on CNN. The Supreme Court held that a "use that shares the purpose of a copyrighted work, by contrast, is more likely to provide 'the public with a substantial substitute for matter

protected by the [copyright owner's] interests in the original wor[k] or derivatives of [it],' which undermines the goal of copyright." *Id.*

The cautionary note of the Second Circuit in Warhol III is particularly salient to the issue in this case:

> "Whether a work is transformative cannot turn merely on the stated or perceived intent of the artist or the meaning or impression that a critic – or for that matter, a judge – draws from the work. Were it otherwise, the law may well "recogniz[e] any alteration as transformative." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.05(B)(6). In conducting this inquiry, however, the district judge should not assume the role of art critic and seek to ascertain the intent behind or meaning of the works at issue. That is so both because judges are typically unsuited to make aesthetic judgments and because such perceptions are inherently subjective. Instead, the judge must examine whether the secondary work's use of its source material is in service of a "fundamentally different and new" artistic purpose and character, such that the secondary work stands apart from the "raw material" used to create it. *Cariou*, 714 F.3d at 706 (internal quotation marks omitted).

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 42 (2d Cir. 2021), *cert. granted,* 142 S. Ct. 1412 (2022), and *aff'd sub nom. Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023).

Here, Defendant's secondary purpose, if any, must remain unstated since Defendant cannot amplify the record to provide such purpose in the context of a motion to dismiss. Unless this Court accepts Defendant's inappropriate invitation of becoming a judge of artistic purpose and character, which it should not, what this Court is left with the bare pleading and the side-by-side comparison of Plaintiff's Video and Defendant's post on the Account.

Here, as in the *Warhol* cases, the Court should find that Defendant's use of Plaintiff's Video was for the same purpose as that for which it was offered and is not sufficiently transformative, particularly at this stage of the litigation where

Defendant has not, and cannot, provide any factual disagreement to the well-pled allegations set forth in the FAC. Thus, Defendant's fair use defense must fail.

## B. <span style="font-variant: small-caps">THE SECOND FAIR USE FACTOR DOES NOT FAVOR DEFENDANT</span>

The second fair use factor asks the Court to consider the nature of the copyrighted work. *Harper & Row*, 471 U.S. at 563-64. This factor is less significant in light of the decision in *Warhol IV,* to the extent that *Warhol IV* holds that a determination of the first fair use factor will necessarily affect the resolution of the remaining fair use factors. The Ninth Circuit has recognized that individual works merit copyright protection. *Monge*, 688 F.3d at 1177 citing *Ets–Hokin v. Skyy Spirits, Inc*., 225 F.3d 1068, 1074 (9th Cir. 2000) ("Indeed, the idea that photography is art deserving [copyright] protection reflects a longstanding view of Anglo–American law").

That said, Defendant argues that the second fair use factor purportedly favors him, insofar as Plaintiff's Video is informative and not creative in nature. Defendant's argument in this regard is not persuasive as under 17 U.S.C. § 401(c), a certificate of registration establishes a rebuttable presumption of ownership, originality, and validity in the Photograph. *S.O.S. Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 (9th Cir. 1989). Similarly, the mere fact that a work "documents an event does not turn a pictorial representation into a factual recitation of the nature referenced in *Harper & Row*." *Id.* Therefore, Defendant's attempt to diminish the viability of Plaintiff's copyright because the Video is purportedly factual, rather than creative, is without merit, insofar as the registration of the Video is *prima facie* evidence that the subject matter thereof is original and copyrightable.

In this case, the Video depicts aerial footage of the aftermath of Hurricane Dorian. This required the author of the Video to travel to the Bahamas, use specialized equipment to obtain such aerial footage, and put himself in a dangerous

1  situation after a major Hurricane. Because Plaintiff had to "exercise both technical
2  skill and aesthetic judgment when capturing the subject image[]," (*Id.*) the Court
3  should find that Plaintiff's Video is sufficiently creative so as to warrant copyright
4  protection. In this regard, courts are encouraged to favor authors of copyrighted
5  works in finding sufficient creativity for purposes of copyright because "this [nature
6  of the copyrighted work] factor typically has not been terribly significant in the
7  overall fair use balancing." *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792,
8  803 (9th Cir. 2003) (quoting *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc*.,
9  109 F.3d 1394, 1402 (9th Cir. 1997)); see also *McGucken v. Pub Ocean Ltd*., 42
10  F.4th 1149, 1161 (9th Cir. 2022).

11      Defendant further contends that the as the Video was published on "CNN's
12  highly followed Instagram Account" (which contains one third of the followership
13  of Defendant's Account) before he displayed it on the Account, this factor weighs
14  in favor of Defendant. (*Dkt. No.* 28 at pg. 15, ¶¶ 23 – 27). This argument is misplaced
15  as it has no bearing on the second factor analysis. Thus, the Court should find this
16  factor weighs in favor of Plaintiff.

## C. THE THIRD FAIR USE FACTOR DOES NOT FAVOR DEFENDANT

18      The third fair use factor asks the Court to consider the amount and
19  substantiality of the portion of a rights-protected work expropriated by an infringer.
20  "[N]o more of a work may be taken than is necessary to make the accompanying
21  comment understandable." *Supermarket of Homes, Inc. v. San Fernando Valley Bd.*
22  *of Realtors*, 786 F.2d 1400, 1409 (9th Cir. 1986); *Sofa Ent., Inc.*, 782 F. Supp. 2d at
23  907. The Supreme Court has explained that "the extent of permissible copying varies
24  with the purpose and character of the use" and characterized the relevant inquiry as
25  whether "'the amount and substantiality of the portion used['] ... are reasonable in

relation to the purpose of the copying." *Campbell*, 510 U.S. at 586-87 (quoting 17 U.S.C. § 107(3)).

Defendant avers that the third fair use factor favors him because the Video was used for a different purpose than that for which it was taken. This is not the legal standard for the third factor analysis. Defendant admits that he copied the entire Video that was published by CNN which contained CNN and Brandon Clement's copyright credit. He avers that using the entire Video "would make the largest impact" to show "the full extent of the destruction and demonstrating the newsworthiness of the material." (*Dkt. No.* 18 at pg. 17, ¶¶ 1 – 15). This is false. Defendant did not need to show the entire Video to show the effects of Hurricane Dorian. More importantly, Defendant fails to argue why any other video or photograph could not have depicted the impact of this Hurricane, or any other hurricane, to further his purported purpose of "educating his followers on climate change." Instead, Defendant used an entire Video, that he knew had been licensed to CNN by Brandon Clement (thus knowing it was a for-profit video and not free to use), to further his purpose.

As courts have repeatedly emphasized, the inquiry "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 608 (S.D.N.Y. 2020) (citing *Campbell*, 510 U.S. at 587, 114 S.Ct. 1164). Regarding the qualitative nature of the work used, we look to see whether "the heart" of the copyrighted work is taken—in other words, whether the portion taken is the "most likely to be newsworthy and important in licensing serialization." *Campbell,* 510 U.S. at 586, 114 S.Ct. 1164; *see also Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924, 941 (9th Cir.), opinion amended on denial of reh'g, 313 F.3d 1093 (9th Cir. 2002); *Elvis Presley Enters., Inc.,* 349 F.3d at 630.

The Video published by Defendant was the portion of the Video Plaintiff licensed to CNN. Defendant's unaltered reproduction of the Video's imagery demonstrates the Video's commercial value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."). Defendant freely stole the entire Video that CNN paid to license and displayed it to his 61.2 million followers without paying a cent. Thus, Defendant cannot claim that the third use factor is in his favor.

## D. THE FOURTH FAIR USE FACTOR DOES NOT FAVOR DEFENDANT

In the final prong of his motion, Defendant argues that the fourth fair use factor—which requires the Court to consider the effect on the potential market for the copyrighted work—also favors him. Defendant is again wrong. The final fair use factor is "the effect of the use upon the *potential market* for or value of the copyrighted work." *Monge,* 688 F.3d at 1180, quoting 17 U.S.C. § 107(4) (italics by Court). The fourth fair use factor requires the Court to "consider not only the effect of the allegedly infringing work itself, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original'." *Id.* see also *Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud*., No. 19-55264, 2021 WL 3721438, at *2 (9th Cir. Aug. 23, 2021) ("the fourth factor [is] the 'single most important element of fair use'.").

The fact that the focus is on the *potential market* for or value of the copyrighted work is critical to this inquiry, insofar as it shifts the Court's focus away from the myopic—whether this particular defendant's actions have diluted the market for this particular picture—to the broad, that is: "if the challenged use should

become widespread, it would adversely affect the potential market for the copyrighted work." *Monge,* 688 F.3d at 1180, quoting *Harper & Row*, 471 U.S. at 568; *Chicago Bd. of Educ. v. Substance, Inc*., 354 F.3d 624, 627 (7th Cir. 2003) ("[t]here is no analytical difference between destroying the market for a copyrighted work by producing and selling cheap copies and destroying the subsequent years' market for a [work] …").

In other words, the fourth fair use factor focuses on the question of usurpation. That is because "Copyright law serves to protect a copyright holder's ability to benefit from the market for his or her work, as well as from any markets that the copyright holder could reasonably be expected to enter." *BWP Media USA, Inc. v. Gossip Cop,* 196 F.Supp.3d at 409 (S.D.N.Y. 2016). "Thus, when assessing the fourth fair use factor, courts ask whether a defendant's use usurps the market for the copyright holder's work." *Id.* citing *Campbell*, 510 U.S. at 593, 114 S.Ct. 1164.

Defendant's contention that the fourth fair use factor favors him is legally erroneous insofar as it seeks to impermissibly shift the burden to Plaintiff to disprove this point, rather than on Defendant to prove same. "Not much about the fair use doctrine lends itself to absolute statements, but the Supreme Court and our circuit have unequivocally placed the burden of proof on the proponent of the affirmative defense of fair use." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020)"). Indeed it was held that "[W]e have never held that the rightsholder bears the burden of showing actual market harm. Nor would we so hold. Fair use is an affirmative defense; as such, the ultimate burden of proving that the secondary use does not compete in the relevant market is appropriately borne by the party asserting the defense: the secondary user. *Warhol III,* 11 F.4th at 49.

With this focus in mind, it is clear that the fourth fair use factor strongly favors Plaintiff. That is because if the Court were to permit a would-be infringer to use any photograph/video at any time, without license or permission, merely because the

provider identifies itself as an "environmental activist" or considers the copyrighted work to be "newsworthy," it would damage—if not eliminate the potential market for rightsholders to sell their work and with it — copyright. Further to this point, as we have moved into a new societal phase where social media itself creates "news" based on the ease of disseminating information to a large audience quickly, web-based news organizations and celebrities should not be allowed to simply leverage their platforms and "create" news through their distribution – lest there be nothing left at all to copyright. A copyright holder would not be able to sell their works at all since anyone could simply steal the image/video and claim its theft fair use once they distribute the image and create a story. This dynamic was considered and rejected by the Supreme Court in *Harper Row* in 1985.

The Video published by Defendant was the portion of the Video Plaintiff licensed to CNN (it was even posted with the CNN watermark). Defendant's unaltered reproduction of the Video's imagery demonstrates the Video's commercial value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression."). Defendant freely stole the Video that CNN paid to license and displayed it to his 61.2 million followers without paying a cent. Over one and half million people viewed the Video on the Account. CNN only has twenty million and one hundred thousand followers on its Instagram Account. CNN believed it was receiving breaking news and exclusive coverage as the Video, yet, Defendant, who has three times the viewership of CNN, stole the Video and posted it for free. Therefore, it is clear that the market for the Video was diluted.

In light of the foregoing, this Court should find that Defendant has failed to show the fourth fair use factor favors him, insofar as he has provided no market

evidence to support his contention that the Video on his Account would not adversely affect the market for Plaintiff to license his content. That is particularly so where, as here, the Court must accept the well-pleaded allegations of the FAC which allege that permitting the widespread use of Plaintiff's Video in a manner similar to the use made by Defendant would, and did, destroy the market for the Video.

### E. BALANCING THE FACTORS

The fair use inquiry "presents a holistic, context-sensitive inquiry 'not to be simplified with bright-line rules[.] ... All [four statutory factors] are to be explored, and the results weighed together, in light of the purposes of copyright.'" *Warhol III*, 11 F.4th at 37 (quoting *Campbell*, 510 U.S. at 578); *see also Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926 (2d Cir. 1994) (characterizing *Campbell* as "apparently abandoning the idea that any factor enjoys primacy"). Here, all four factors weigh firmly against a finding of fair use. Considering all four fair use factors "in light of the purposes of copyright," *Campbell*, 510 U.S. at 578, the Court should conclude that Defendant's use of the Video is wholly non-transformative and there is no evidence that Defendant did not profit from the display of the Video. Taken as a whole, Defendant used the Video as an "illustrative device" to merely describe the subject matter of the Video for commercial purposes.

### CONCLUSION

For all the reasons set forth herein, it is respectfully requested that Defendant's motion to dismiss be denied in its entirety, together with such other and further relief as the Court deems just, equitable and proper.

Dated: November 22, 2024

**SANDERS LAW GROUP**

By: _/s/ Jacqueline Mandel_
Craig B. Sanders, Esq. (Cal Bar 284397)
Jacqueline Mandel, Esq. (Cal Bar 317119)
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: jmandel@sanderslaw.group
*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT